Filed 2/2/21  P. v. Medina CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OSCAR MEDINA,<br><br>Defendants and Appellants. | B303952<br><br>(Los Angeles County<br>Super. Ct. No. BA447145) |

APPEAL from an order of the Superior Court of Los Angeles County, James R. Dabney, Judge.  Affirmed in part, reversed in part.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

In 2018, a jury convicted defendant and appellant Oscar Medina of four counts of attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664), and four counts of assault with a firearm (§ 245, subd. (a)(2)). The trial court imposed an aggregate sentence of 62 years to life in prison. We affirmed the convictions but remanded the case to the trial court with instructions to strike one 5-year prior serious felony enhancement (§ 667, subd. (a)(1)), to consider whether to strike other serious felony and firearm enhancements in light of new laws enacted after the sentencing hearing, and to stay rather than impose concurrent sentences for assault with a firearm. (See *People v. Medina* (2019) 33 Cal.App.5th 146, 157 (*Medina*).)[2]

At a hearing following remand, the trial court elected not to strike the firearm enhancement, but did not discuss the serious felony enhancements. The abstract of judgment filed after the hearing includes all of the previously imposed serious felony enhancements. The abstract of judgment also indicates that the trial court stayed the sentences for assault with a firearm, but the court made no statement about this during the hearing.

Medina contends that the trial court erred by failing to act on the serious felony enhancements and by failing to state during the hearing that the sentences for assault with a firearm were stayed. He also contends that the trial court abused its discretion by refusing to strike the firearm enhancement, that his sentence

---

[1] Unless otherwise specified, subsequent statutory references are to the Penal Code.

[2] The opinion in Medina's direct appeal was certified for partial publication. Elsewhere in this opinion, we cite the nonpublished portions of the same opinion as *People v. Medina* (Mar. 19, 2019, B286117) [as modified April 16, 2019].

violates the state and federal constitutional protections against cruel and unusual punishments, and that the court abused its discretion by refusing to reduce his $5,000 restitution fine. We agree with Medina as to the failure to act on the serious felony enhancements and to declare on the record that the sentences for assault with a firearm were stayed. In all other respects, we affirm.

## FACTS AND PROCEEDINGS BELOW

In our prior opinion, we briefly summarized the facts of the case: "Defendants Antonio Silva and Oscar Medina, members of the Headhunters gang, were driving through the turf of a rival gang called Diamond Street. They lost control of their car and crashed into an apartment building. Bystanders gathered to look at the accident. Unable to move the disabled vehicle, Silva and Medina left and returned in another car. Silva got out of the car, pointed his gun, and started shooting at bystanders while Medina attempted to recover the crashed car. The people on the street (including two individuals, Juan Alcaraz and Jose Sanchez, who lived in the apartment building) fled in terror. None ended up being hit by the gunfire. Medina was still unable to move the car, and Silva and Medina then left separately. Silva left in the car in which he and Medina had returned to the accident scene. Before Medina left on foot, he screamed his gang's name and a derogatory term for the Diamond Street gang." (*Medina, supra,* 33 Cal.App.5th at p. 149.)

The trial court sentenced Medina to 62 years to life in prison. The sentence consisted of a base high term of nine years to life for one count of attempted murder (§ 664, subd. (a)), tripled because Medina had suffered two prior strike convictions (see §§ 667, subd. (e)(1), 1170.12, subd. (c)(2)(A)(i)), plus 20 more years because a principal personally and intentionally discharged a firearm

3

in the commission of the offense (§ 12022.53, subds. (c), (e)),[3] plus five additional years for each of three prior serious felony enhancements. (§ 667, subd. (a)(1).) The court imposed the same sentence, to run concurrently, on each of the three other attempted murder convictions. As to the convictions on four counts of assault with a firearm, the court stated that these counts would all "merge pursuant to Penal Code [s]ection 654." The abstract of judgment indicated a concurrent sentence for those four counts. In addition to other fines, the trial court imposed a restitution fine of $5,000.

After the sentencing hearing but before the judgment against Medina became final, the Legislature enacted Senate Bill No. 620 (2017–2018 Reg. Sess.) (Stats. 2017, ch. 682, pp. 5104-5106) (Senate Bill No. 620) and Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill No. 1393), which gave trial courts the discretion to strike, respectively, five-year enhancements under section 667, subdivision (a)(1), and firearm enhancements under section 12022.53, for purposes of sentencing.

In addition to raising other issues, Medina contended in his direct appeal that the new laws applied retroactively to his case, and that the trial court must hold a new hearing to decide whether or not to strike the firearm and previous felony enhancements from his sentence. We agreed and remanded the case for this purpose. (*People v. Medina* (Mar. 19, 2019, B286117) [nonpub. portion of

---

[3] Although Medina did not personally fire the weapon, the firearm enhancement nevertheless applied to him because the jury found that Medina committed the offense for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members. (See §§ 186.22, subd. (b); 12022.53, subd. (e)(1); *Medina*, *supra*, 33 Cal.App.5th at pp. 150–152.)

4

opn.] at pp. 37–38.)  We also agreed with Medina that the trial court erred by imposing two prior serious felony enhancements based on two convictions in the same case.  (*Id.* at pp. 38–39.)  Those enhancements apply only to convictions based "on charges brought and tried separately."  (§ 667, subd. (a)(1).)  Finally, we agreed with Medina that the trial court erred by failing to stay the sentences for Medina's convictions for assault with a firearm under section 654.  (*People v. Medina*, *supra*, B286117, at p. 39.)

We remanded the case to the trial court with directions to "recalculate Medina's sentence to strike one of the five-year prior serious felony enhancements, determine whether to strike the two remaining prior serious felony enhancements under section 667, subdivision (a)(1) and/or the 20-year firearm-use enhancement under section 12022.53, subdivision (c), and reduce the sentence accordingly if appropriate."  (*Medina*, *supra*, 33 Cal.App.5th at p. 157.)  In addition, we ordered the trial court to "stay the sentences on counts 5 through 8 for assault with a firearm under section 654," and "to prepare new abstracts of judgment."  (*Ibid.*)

At a hearing following remand, the court stated that the case "was submitted back for me to reconsider whether I wish to strike the [section 12022.53 firearm enhancements] that were imposed.

"Having heard the evidence in this case, I'm not inclined to do so.  So I've exercised my discretion, and the conviction stays as previously set."

Medina's attorney raised two objections.  First, he objected to the imposition of the restitution fine "given that [Medina] was not provided an opportunity to be heard on his ability to pay when that restitution order was imposed."  In addition, Medina objected to the sentence "under the [Eighth] Amendment grounds [of] cruel and unusual punishment."  The trial court overruled both

5

objections, noting that Medina played an active role in the shooting, and that he would be able to pay the restitution fine with wages he would earn in prison.

Neither the trial court nor the attorneys addressed the serious felony enhancements or the sentences for assault with a firearm. The court prepared a new abstract of judgment, which listed the four counts of assault with a firearm as stayed under section 654, but which did not change the number of serious felony enhancements, nor the aggregate length of the sentence of 62 years to life.

## DISCUSSION

### A. *Remand to Fulfill Obligations From Prior Appeal*

Medina contends that we must remand the case once again to allow the trial court to fulfill the requirements we imposed in our prior opinion. The Attorney General agrees, as do we. "[W]hen an appellate court remands a matter with directions governing the proceedings on remand, ' "those directions are binding on the trial court and *must* be followed." ' " (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 64.)

In this case, the trial court fulfilled our directions only in part, and we must remand the case once again so that the trial court can fulfill the remainder of the requirements. In particular, the court must strike one of the two prior serious felony enhancements under section 667, subdivision (a)(1) that were based on two counts tried together in case number BA255819. As we explained in our prior opinion, the court may impose these enhancements "for each . . . prior conviction on charges *brought and tried separately*." (§ 667, subd. (a)(1), italics added.) This applies to

6

all four counts of attempted murder, including the three counts for which the trial court imposed concurrent sentences. In addition, the trial court must decide whether to exercise its discretion under Senate Bill No. 620 to strike either or both of the remaining serious felony enhancements for the four attempted murder counts.

The trial court also made no pronouncement with regard to the convictions for assault with a firearm. The record of the first sentencing hearing indicates that the trial court intended from the outset to stay the sentences under section 654, but misspoke in stating that the sentences would "merge." The amended abstract of judgment specifies that the sentences for these counts are stayed, but "the abstract of judgment is not itself the judgment of conviction, and cannot prevail over the court's oral pronouncement of judgment to the extent the two conflict." (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070, superseded by statute on another ground, as stated in *People v. Frahs* (2018) 27 Cal.App.5th 784, 795.) In order to avert any future confusion about the sentence, we will order the trial court to state on the record that the four counts of assault with a firearm are stayed under section 654.

**B.      *Decision Not to Strike the Firearm Enhancements***

Medina contends that the trial court abused its discretion by deciding not to strike the firearm enhancement under section 12022.53, subdivision (c) for purposes of sentencing. We disagree.

As part of Senate Bill No. 1393, the Legislature enacted section 12022.53, subdivision (h), which gives trial courts the discretion " 'in the interest of justice pursuant to Section 1385 and at the time of sentencing, [to] strike or dismiss an enhancement otherwise required to be imposed by this section.' " As we explained in a prior decision on this subject, we review the trial court's

decision whether to strike an enhancement under section 1385 for abuse of discretion. (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*).) " 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] Second, a " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*Ibid.*, quoting *People v. Carmony* (2004) 33 Cal.4th 367, 376–377.)

The trial court explained its decision not to strike the enhancement on the basis of its own experience having "heard the evidence in this case." The court noted that Medina and Silva "were driving in what would be rival gang territory. [¶] They crashed up against an apartment house, left the location, and then came back. And the videotape showed what appeared to be the gun being transferred back and forth between the two of them." Although Silva was the shooter, "Medina's involvement was more than passive."

Medina takes issue with the trial court's statement that the video appeared to show a gun transferred between Medina and Silva five minutes before the shooting. The surveillance video footage shows Medina and Silva walking away from the scene of

8

the car accident. Medina carried a dark colored object in one hand, held it up as if he meant to pass it to Silva, then dropped it on the ground. Silva picked it up, and the two continued walking. According to Medina, the item seen in the video was not the correct shape to be the gun, and thus there was no evidence that Medina personally held the gun or transferred it to Silva.

We have reviewed the video footage, and although we cannot say with certainty that the item in Medina's hand was a gun, we defer to the trial court's reasonable inference that it was. (See *People v. King* (2010) 183 Cal.App.4th 1281, 1323.) But the trial court did not justify its decision solely on the basis that Medina passed the gun to Silva, but rather on the conclusion that Medina's involvement was "more than passive." Medina disagrees with that characterization, but the evidence is against him. His culpability depends much less on whether he passed the gun to Silva while he was walking away from the car crash than on his actions five minutes later, when the shooting took place. As the surveillance video shows, Medina and Silva returned to the scene of the accident riding in a car with an unknown driver. Even before the vehicle slowed down, Medina opened the front passenger side door and leaned out, appearing to use the door as a shield. The car began to slow, and Silva opened the rear passenger door. Both Silva and Medina exited the car before it came to a full stop. Silva walked toward the crowd gathered near the car and began shooting.

This evidence yields inferences in support of the jury's verdicts finding both defendants guilty of attempted murder and of the trial court's decision not to strike the firearm enhancement. Medina and Silva knew they were traveling in a rival gang's territory and appeared to have planned for a confrontation when they returned to the scene of the accident. This explains why they

were hiding behind the open doors of the car, ready to jump out at a moment's notice. Furthermore, whether or not Medina ever handled the gun, the evidence is susceptible of the inference that he knew that Silva was armed and was prepared to fire the weapon. After Silva shot at the bystanders, Medina showed no sign of surprise, remorse, or concern about the well-being of the victims. Far from objecting to Silva's actions, Medina stayed at the scene and yelled an insult about the rival gang at the bystanders who had taken cover from the shooting.

Medina points out accurately that, although no one was injured in the shooting, his sentence—57 years to life, even after subtracting five years for the incorrectly imposed serious felony enhancement—is lengthier than the base term of 25 years to life for first degree murder. (See § 190, subd. (a).) But of course Medina's sentence is not based solely on the immediate circumstances of the crime in isolation, but also reflects his long history of criminal behavior, as well as his willingness to participate in a crime involving the shooting of firearms for the benefit of a criminal street gang and endangering the lives of many in the crowd.

Reasonable minds might differ on the appropriate length of Medina's sentence, but it is not our role to substitute our judgment for that of the trial court. We cannot say that the trial court's decision not to strike the enhancement is " 'so irrational or arbitrary that no reasonable person could agree with it.' " (*Pearson, supra*, 38 Cal.App.5th at p. 116.) Thus, we cannot reverse the trial court's decision.[4]

---

[4] We also disagree with Medina's contention that his attorney rendered ineffective assistance by failing to advocate more forcefully on his behalf. There is no reasonable probability that

## C.            *Cruel and/or Unusual Punishment*

Medina contends that his sentence violates the federal Eighth Amendment prohibition on cruel and unusual punishment, as well as the California constitutional ban on cruel or unusual punishment. (Cal. Const., art. I, § 17.) We rejected an identical claim in Medina's direct appeal, and we reject it again now.

The Attorney General contends, and we agree, that the law of the case doctrine bars our reconsideration of this issue. "Under the doctrine of the law of the case, a principle or rule that a reviewing court states in an opinion and that is necessary to the reviewing court's decision must be applied throughout all later proceedings in the same case, both in the trial court and on a later appeal." (*People v. Jurado* (2006) 38 Cal.4th 72, 94 (*Jurado*).) "Thus, the law-of-the-case doctrine 'prevents the parties from seeking appellate reconsideration of an already decided issue in the same case absent some significant change in circumstances.' " (*People v. Boyer* (2006) 38 Cal.4th 412, 441.)

In Medina's direct appeal, we held that Medina forfeited the claim that his sentence represented cruel and/or unusual punishment under the state and federal constitutions, and that in any event, his claim failed on the merits in that it was not grossly disproportionate in light of the defendant's own actions, how other crimes are punished in California, and how similar crimes are punished in other jurisdictions. (See *People v. Medina*, *supra*, B286117, at pp. 34–37.) In this appeal, Medina once again claims that he did not forfeit the claim of cruel or unusual punishment,

---

different arguments at the hearing would have obtained a better outcome for Medina. (See *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

and that his sentence is grossly disproportionate.  He argues that the law of the case doctrine does not apply because there has been a change in circumstances.  In particular, he notes that his attorney raised the issue of cruel or unusual punishment at the hearing after remand, unlike in his original appeal, when his attorney did not raise the issue at the original sentencing hearing.  But this is beside the point.  The law of the case doctrine applies "throughout all later proceedings in the same case, both in the trial court and on a later appeal."  (*Jurado*, *supra*, 38 Cal.4th at p. 94.)  By the time Medina's attorney raised the issue after remand, the law of the case doctrine already applied to the issue.  Medina forfeited the issue by failing to raise it at the original sentencing hearing, and his subsequent actions do not change that fact.

In addition, Medina contends that the circumstances have changed because that at the time of the original appeal, there was a possibility that the trial court would strike the firearm enhancement on remand.  In this appeal, by contrast, the trial court has already rejected that possibility.  We are not persuaded that this distinction makes a difference.  In our original opinion, we addressed the constitutionality of Medina's full sentence:  "[A]n aggregate state prison term of 62 years to life." (*People v. Medina*, *supra*, B286117, at p. 34.)  We held that that sentence did not violate the prohibition against cruel or unusual punishment.  The possibility that the trial court might reduce the sentence did not enter into our analysis.

Even if the law of the case doctrine did not apply, Medina's claim would fail on the merits.  We explained this matter in detail in our prior opinion in this case (*People v. Medina*, *supra*, B286117, at pp. 34–37), and we stand by that analysis.

**D.**     *Restitution Fine*

At the hearing after remand, Medina objected to the amount of the $5,000 restitution fine (§ 1202.4, subd. (b)(1)) on the grounds that he had not had an opportunity to be heard on his ability to pay the fine, and that the amount of the fine constituted cruel and unusual punishment. Medina now contends that the trial court abused its discretion by overruling the objection. We are not persuaded.

The trial court must impose a restitution fine of at least $300 and no more than $10,000 for any defendant convicted of a felony, "unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record." (§ 1202.4, subd. (b).) The court may determine the amount of the fine at its discretion "and commensurate with the seriousness of the offense." (§ 1202.4, subd. (b)(1).) "[A] defendant's inability to pay may not be considered a compelling and extraordinary reason not to impose the restitution fine; inability to pay may be considered only when increasing the amount of the restitution fine above the minimum required by statute." (*People v. Castellano* (2019) 33 Cal.App.5th 485, 489.)

Medina contends that the amount of the fine was incommensurate with the seriousness of the offense, arguing that his role in the crime was relatively minor and noting that no one was injured in the shooting. We disagree. First, section 1202.4, subdivision (b)(2) sets out a formula that the court may use in setting the amount of the fine, consisting of "the minimum fine [$300] . . . multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).) In this case, the $5,000 fine is significantly

13

less than the amount specified by that formula.  Second, contrary to Medina's claims, and as we have described above (see Discussion part B, *ante*), he played more than a minor role in the crime.  We do not understand how a $5,000 fine was incommensurate with his active participation in a crime that endangered the lives of many people.

Next, Medina argues that the trial court erred by failing to take into account his ability to pay the fine.  The trial court refused to reduce the amount of the fine on this ground because "it would appear . . . that he would be able to . . . recompense through prison wages that he would be earning."

We agree with the court in *People v. Kopp* (2019) 38 Cal.App.5th 47, 96, review granted November 13, 2019, S257844 (*Kopp*) that "[i]t is the defendant who bears the burden of proving an inability to pay."  The language of section 1202.4 does not require the court to ascertain or take into consideration the defendant's ability to pay.  Instead, the statute provides that "[i]nability to pay *may* be considered only in increasing the amount of the restitution fine in excess of the minimum fine."  (§ 1202.4, subd. (c), italics added.)  As the court explained with respect to another fine in *People v. McMahan* (1992) 3 Cal.App.4th 740, 749, unless the statutory language clearly makes the defendant's ability to pay a condition precedent of imposing the fine, the defendant bears the burden of raising the issue and providing evidence.  In addition to being superior as a matter of statutory interpretation, this makes sense from a practical standpoint, since "the most knowledgeable person regarding the defendant's ability to pay [is] the defendant himself."  (*Ibid.*)

At the hearing after remand, Medina's attorney objected to the amount of the fine but presented no evidence of Medina's

ability to pay.  Consequently, the trial court did not err by denying Medina's motion.  Medina contends that this failure represented ineffective assistance of counsel, but even now, he has failed to show that the trial court's decision not to reduce the fine was wrong on the merits.  Medina notes that at current prison wages, he can expect to pay only about $60 per year toward the fine.  Assuming that there are no future increases in prison wages and that Medina has no other sources of income, it would take more than 83 years for the fine to be paid off.  But Medina cites no authority for the proposition that a fine is excessive if it is more than the amount the defendant can expect to pay entirely during his sentence using his prison wages alone.  In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the court held that the imposition of certain fines and fees without taking into account the defendant's ability to pay was a violation of due process because it could result in the imprisonment of an indigent defendant solely as a result of his inability to pay. (See *id.* at pp. 1166–1167.)  That is not a concern in this case, where Medina is already in custody, and where the law provides a formula for deducting payments from a prisoner's wages to pay his fines. (See § 2085.5.)  The trial court did not abuse its discretion by failing to take into account the potential unpaid amount when Medina is released from prison decades from now.

## DISPOSITION

The defendant's convictions are affirmed. The matter is remanded to the trial court with directions to strike one enhancement under section 667, subdivision (a)(1) from each of the four counts of attempted murder. The trial court must also decide with respect to each count of attempted murder whether or not to strike the two additional enhancements under section 667, subdivision (a)(1), and declare on the record that the four counts of assault with a firearm are stayed under section 654. After it takes all of these actions, the trial court must recalculate the defendant's sentence and prepare a new abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



FEDERMAN, J.*

_____

\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.